UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

    Plaintiff,

        v.                              Civil Action No. 14-724 (JEB)

UNITED STATES OFFICE OF SPECIAL
COUNSEL,

    Defendant.

## MEMORANDUM OPINION

    Plaintiff Judicial Watch, Inc., filed a Freedom of Information Act request with the United States Office of Special Counsel seeking any records related to an investigation of former senior White House officials Jim Messina and Rahm Emanuel. After a thorough and comprehensive search, OSC released numerous responsive records in full and withheld all or parts of others. Believing Defendant's search to be inadequate, Judicial Watch brought this suit, and OSC now moves for summary judgment. As the search was plainly sufficient, the Court will grant the Motion.

**I.    Background**

    Usually, a FOIA case starts with a FOIA request. This one, however, starts a bit further back. In June 2010, Judicial Watch submitted a complaint to OSC requesting an investigation of Messina and Emanuel for potential violations of the Hatch Act, which regulates partisan political activity by executive-branch officials. See Opp., Exh. 1 (June 15, 2010, letter from Thomas Fitton to William Reukauf). After three years without any word from Defendant, Plaintiff sent a

1

letter inquiring what, if any, action had been taken on its request. See id., Exh. 2 (May 23, 2013, letter from Thomas Fitton to Carolyn Lerner). A week later, the agency responded, explaining that because Emanuel and Messina were no longer employed by the federal government, the complaints against them "ha[d] been closed without further action." Id., Exh. 3 (May 30, 2103, letter from Carolyn Lerner to Thomas Fitton).

In response, Judicial Watch submitted a FOIA request to Defendant seeking "[a]ny and all records concerning, or related to the request for investigation filed by Judicial Watch with the Hatch Act Unit on June 15, 2010 concerning federal employees Jim Messina and Rahm Emanuel." Def. Statement of Undisputed Facts, ¶ 1. A year later, on May 25, 2014 – before OSC had released any responsive records – Plaintiff filed this Complaint. See ECF No. 1. On September 22, 2014, during the pendency of this action, the agency responded to Judicial Watch's request: it identified 645 pages of responsive records, 260 of which were withheld in full, 233 released in part, and 152 released in full. See Mot., Exh. 3 (Vaughn Index).

OSC now moves for summary judgment. In opposition, Plaintiff does not object to any of Defendant's withholdings. See Opp. at 3. Judicial Watch does, however, challenge the scope of OSC's search for responsive records. The Court turns to that claim now.

## II.    Legal Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.  See Scott v. Harris, 550 U.S. 372, 380 (2007); Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA cases typically and appropriately are decided on motions for summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527 (D.C. Cir. 2011).  In a FOIA case, the Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009) (citation omitted).  Such affidavits or declarations "are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks omitted).

**III.   Analysis**

Congress enacted FOIA in order to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (citation omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the

governors accountable to the governed." John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (citation omitted). The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Consistent with this statutory mandate, federal courts have jurisdiction to order the production of records that an agency improperly withholds. See 5 U.S.C. § 552(a)(4)(B); Dep't of Justice v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, 755 (1989). "Unlike the review of other agency action that must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "At all times courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure' . . . ." Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting Dep't of State v. Ray, 502 U.S. 164, 173 (1991)).

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" Valencia-Lucena v. Coast Guard, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990)); see also Steinberg v. Dep't of Justice, 23 F.3d 548, 551 (D.C. Cir. 1994). The adequacy of an agency's search for documents under FOIA "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case." Weisberg v. Dep't of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). To meet its burden, the agency may submit affidavits or declarations that explain the scope and method of its search "in reasonable detail." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982). Absent contrary

evidence, such affidavits or declarations are sufficient to show that an agency complied with FOIA.  Id.

To establish the sufficiency of its search here, Defendant submitted the declaration of Christopher Kurt, a FOIA Information Officer for OSC.  See Mot., Declaration of Christopher Kurt, ¶ 1.  According to Kurt, he first located the investigative files of Messina and Emanuel using the unique case numbers that had been generated in response to Plaintiff's 2010 request.  Id., ¶¶ 7-8.  He then reviewed these files line by line for responsive records and identified documents and portions of documents that might need to be withheld.  Id., ¶¶ 8-9.  Kurt then expanded his search.  Because the subject of the request was a complaint under the purview of OSC's Hatch Act Unit, he sought hard-copy records from four pertinent parties there: the HAU attorney assigned to the case, her immediate supervisor, the Deputy Chief of the HAU, and the Administrative and Program Assistant for the HAU.  Id., ¶ 10.  Kurt asked each one – except the assigned attorney, Mary Larsen (who had since left the agency) – to search for paper records relating to the Messina and Emanuel cases, and he also confirmed that they would be the only parties likely to possess responsive records.  Id.  The members of the HAU then searched for relevant records in filing cabinets, desk drawers, a book case, and a credenza.  Id.

Kurt's search did not end there.  He also asked OSC's Information Technology Branch (ITB) for any electronic records related to the HAU employees listed above.  Id., ¶ 12.  ITB searched email folders, employee drives, and a shared drive, and it returned its results to Kurt.  Id., ¶¶ 12-13.  These files were then submitted with suggested redactions to the Senior Attorney within the Office of General Counsel for legal review.  Id., ¶ 13.  In addition to these efforts, based on his knowledge of agency operations, Kurt tracked down paper and electronic leads from several other persons in OSC's senior leadership.  Id., ¶¶ 14-16.  After conducting these

multiple searches and de-duplicating the located records, OSC segregated withheld material and released what it could to Plaintiff.

Given these extensive efforts, the Court believes that OSC has easily cleared the bar for an adequate search. It searched for responsive files in several formats, from several sources, in several locations, and it confirmed that these would be the only places that any responsive files might be found. Judicial Watch, for its part, does not claim that the search was made in bad faith, nor does it challenge the search terms, the parameters of the search, or the sources searched. What Plaintiff does allege is that there are records OSC should have previously created, which then should have been produced along with the rest of the documents. See Opp. at 4.

In more detail, Plaintiff's challenge goes like this: Its June 15, 2010, complaint was made pursuant to 5 U.S.C. § 1216, which provides that when OSC receives such an allegation, it "may," *inter alia*, "investigate and seek corrective action under section 1214 . . . in the same way as if a prohibited personnel practice were involved." Id. § 1216(c). Section 1214, in turn, requires the agency to inform complainants of receipt of their allegations, provide frequent status updates, inform them of actions taken, alert them to the termination of an investigation, and provide a summary of facts ascertained during the investigation. See id. §§ 1214(a)(1)(A), (B), (C), (D), and 1214(a)(2)(A). According to Judicial Watch, it received none of these required communications in OSC's production; because they are responsive to its FOIA request, their absence in the production reveals that the agency "obviously did not conduct a search reasonably calculated to uncover all relevant documents . . . ." Opp. at 5 (internal quotation marks omitted).

The Court is not persuaded. As a careful reader of the above-outlined argument will have noticed, Plaintiff's syllogism overlooks an important "may" in the statutory scheme. For

allegations of Hatch Act violations, "[t]he Special Counsel <u>may</u> investigate and seek corrective action under section 1214 . . . ." <u>Id.</u> § 1216(c) (emphasis added). That § 1214 has obligatory provisions does not change the fact that for Hatch Act allegations, like Plaintiff's, OSC is not required to follow that statute. <u>See, e.g.</u>, <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citations omitted).

      Laid bare, Plaintiff's argument is nothing more than a red herring. An agency's failure to release documents it was never required to generate tells the Court nothing about the adequacy of its search. In fact, it seems rather unlikely that these documents ever existed since Judicial Watch received no § 1214 updates in response to its Hatch Act allegations. Plaintiff, furthermore, could not contend that FOIA requires the <u>creation</u> of documents, <u>see</u> <u>Yeager v. Drug Enforcement Agency</u>, 678 F.2d 315, 321 (D.C. Cir. 1982) ("It is well settled that an agency is not required by FOIA to create a document that does not exist in order to satisfy a request."), and Judicial Watch cannot use a FOIA suit to enforce its interpretation of OSC's obligations under the Hatch Act. Even if Defendant had been required to create these records in 2010 and did so, moreover, this would still not make Plaintiff's case. Generally, identifying a handful of documents that an agency failed to uncover does not, in itself, demonstrate that a search was inadequate. <u>See</u> <u>Boyd v. Criminal Div. of Dep't of Justice</u>, 475 F.3d 381, 391 (D.C. Cir. 2007) ("[T]he fact that a particular document was not found does not demonstrate the inadequacy of a search.").

In light of the search that OSC conducted, which was reasonably calculated to locate all responsive records, the Court concludes that it has fulfilled its obligation under FOIA. Summary judgment on this issue is thus warranted.

## IV. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment. A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 13, 2015